**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **NNPT, LLC** § | |
|         **Plaintiff,** § | |
| § | |
| v. § | |
| § | Civil Action No. 2:14-cv-677 |
| **HUAWEI INVESTMENT & HOLDING CO.,** § | |
| **LTD.; HUAWEI TECHNOLOGIES CO.,** § | **JURY TRIAL DEMANDED** |
| **LTD.; HUAWEI DEVICE (HONG KONG)** § | |
| **CO., LTD.; HUAWEI DEVICE USA INC.;** § | |
| **HUAWEI TECHNOLOGIES USA INC.;** § | |
| **HUAWEI TECHNOLOGIES** § | |
| **COOPERATIF U.A. and FUTUREWEI** § | |
| **TECHNOLOGIES, INC.** § | |
| § | |
|         **Defendants.** § | |

_____

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff NNPT, LLC ("NNPT") for its Complaint against Defendants Huawei Investment & Holding Co., Ltd.; Huawei Technologies Co., Ltd.; Huawei Device (Hong Kong) Co., Ltd.; Huawei Device USA Inc.; Huawei Technologies USA Inc.; Huawei Technologies Cooperatif U.A. and Futurewei Technologies, Inc. (collectively "the Huawei Defendants" or simply "Huawei") hereby alleges as follows:

**THE PARTIES**

1. NNPT is a corporation duly organized and existing under the laws of the state of Texas with a principal place of business at 222 North Fredonia, Longview, Texas 75601.

2. Upon information and belief, Defendant Huawei Investment & Holding Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Huawei Industrial Base (Shenzhen Campus), Bantian, Longgan District, Shenzhen, 518129, China.

3. Upon information and belief, Defendant Huawei Technologies Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Huawei Industrial Base (Shenzhen Campus), Bantian, Longgan District, Shenzhen, 518129, China.  Upon information and belief, Defendant Huawei Technologies Co., Ltd. is a subsidiary of Defendant Huawei Investment & Holding Co., Ltd.

4. Upon information and belief, Defendant Huawei Device (Hong Kong) Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Huawei Industrial Base (Shenzhen Campus), Bantian, Longgan District, Shenzhen, 518129, China.  Upon information and belief, Defendant Huawei Device (Hong Kong) Co., Ltd. is a subsidiary of Defendant Huawei Technologies Co., Ltd.

5. Upon information and belief, Defendant Huawei Technologies Cooperatif U.A. is a corporation organized and existing under the laws of the Netherlands with a principal place of business at Karspeldfeef 4, 1101CJ Amsterdam South, Netherlands.  Upon information and belief, Defendant Huawei Technologies Cooperatif U.A. is a subsidiary of Huawei Technologies Co., Ltd.

6. Upon information and belief, Defendant Huawei Device USA Inc. is a corporation organized and existing under the laws of Texas with a principal place of business at 5700 Tennyson Parkway, Plano, Texas 75024.  Upon information and belief, Defendant Huawei Device USA Inc. is a subsidiary of  Defendant Huawei Device (Hong Kong) Co., Ltd. Defendant Huawei Device USA Inc. my be served via its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

7. Upon information and belief, Defendant Huawei Technologies USA Inc. is a corporation organized and existing under the laws of Texas with a principal place of business at

5700 Tennyson Parkway, Plano, Texas 75024.  Upon information and belief, Defendant Huawei Technologies USA Inc. is a subsidiary of  Defendant Huawei Technologies Coorperatif U.A.  Defendant Huawei Technologies USA Inc. my be served via its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

8. Upon information and belief, Defendant Futurewei Technologies Inc. is a corporation organized and existing under the laws of Texas with a principal place of business at 5700 Tennyson Parkway, Plano, Texas 75024.  Upon information and belief, Defendant Futurewei Technologies Inc. is a subsidiary of Defendant Huawei Technologies Cooperatif U.A.  Defendant Futurewei Technologies Inc. my be served via its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

## JURISDICTION

9. This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from Huawei's unauthorized manufacture, sale and/or offer for sale of various products, including, but not limited to, switches and routers covered by, and prior to the expiration of, U.S. Patent Nos. 6,578,086; 6,130,877; 6,697,325; 7,664,123; and 8,607,323.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including at least 35 U.S.C. § 271 (a).

10. This Court has personal jurisdiction over Defendants Huawei Technologies USA Inc., Huawei Device USA Inc., and Futurewei Technologies Inc. by virtue of the fact each is a Texas corporation and has a principal place of business in Texas.

11. This Court has personal jurisdiction over the remaining Huawei Defendants at least under the Texas long arm statute and due process, because the non-domestic Huawei

Defendants (*viz.* Huawei Investment & Holding Co., Ltd.; Huawei Technologies Co., Ltd.; Huawei Device (Hong Kong) Co., Ltd.; and Huawei Technologies Cooperatif U.A.) have availed themselves of the rights and benefits of this District by conducting business in this jurisdiction, including by promoting their products for sale via the internet, which are accessible to and accessed by residents of this District, and because they have purposefully availed themselves of the rights and benefits of the laws of the State of Texas, having incorporated subsidiaries in Texas and having previously submitted to personal jurisdiction in and filed lawsuits in the United States District Courts in Texas, including the Eastern District of Texas.  The exercise of jurisdiction over all of the Huawei Defendants would not offend traditional notions of fair play and substantial justice.

## VENUE

12.     Huawei conducts business in this District, including providing and promoting products and services which are used, offered for sale, sold, imported into and have been purchased in Texas, including in this judicial district.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), (c) and (d) and 1400(b).

## BACKGROUND

13.     This lawsuit asserts causes of action for infringement of United States Patent Nos. 6,578,086; 6,130,877; 6,697,325; 7,664,123; and 8,607,323 (collectively, the "Asserted Patents").  All of the inventions disclosed and claimed in the Asserted Patents were conceived and created by inventors that were working for an entity within or related to the Nortel corporate family at the time of the invention ("Nortel").

14.     During bankruptcy proceedings many years later, Nortel sold the Asserted Patents, among others, to a consortium of technology companies known as Rockstar Bidco, L.P.

Based on a purchase agreement and assignment from Rockstar Consortium US LP, Spherix Incorporated acquired, *inter alia*, the Asserted Patents, which it then assigned to NNPT.  NNPT has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement.

15. According to contemporary reports in the *Wall Street Journal*, Huawei was an active bidder for the Nortel patent portfolio, including the Asserted Patents.  Huawei's efforts to acquire those patents, however, was ultimately unsuccessful.

16. Nortel's history is inextricably intertwined with the origins of telecommunications.  Alexander Graham Bell invented the telephone in 1874, for which he received a United States Letters Patent in 1876 (U.S. Patent No. 174,465).  The Bell Telephone Company (later AT&T) was formed in 1877.  Bell Canada was formed three years later, in 1880.  Nortel was formed as the manufacturing arm of Bell Canada in 1895.  In its early years, Nortel was instrumental in establishing the Canadian telecommunications industry.  By the mid-twentieth century, Nortel had matured into a global research and development powerhouse.

17. Each of the former Nortel employees who is named as an inventor on an Asserted Patent assigned all of their rights in the respective Asserted Patent to Nortel.

18. At its peak in 2000, Nortel had grown to more than 90,000 employees world-wide, including 35,000 in the United States, had market capitalization of nearly $300 billion and had yearly revenues approaching $30 billion.  In 2000 alone, for example, Nortel spent nearly $4 billion on research and development involving some 25,000 research and development employees world-wide, including nearly 10,000 in the United States.

19. Nortel had offices world-wide, with over 100 locations in the United States alone.

20. Nortel was an innovator in the telecommunications industry. For example, Nortel was one of the first to envision telecommunications over fiber optics; it led the industry's move to the era of digital telecommunications; it was the first to develop a telephone with the controls in the handset rather than in the base; and it contributed to the development of numerous telecommunications standards and created core technology necessary to implement many of those standards. From 1992 through 2009, Nortel invested more than $34 billion into research and development.

21. Nortel's substantial research and development investments, and the inventiveness of the Nortel technology professionals, directly resulted in Nortel receiving well over 4,200 patents covering wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductor and other telecommunications as of July 2011. Nortel made patents a priority and its employees received bonuses for their innovations. Each of the Asserted Patents issued as the result of the inventiveness of Nortel personnel and Nortel's significant research investment.

22. Like many companies in the telecommunications industry, the economic and competitive pressures during the 2000s—including competition from manufacturing operations based in China—resulted in Nortel being forced to restructure, contract in size, and eventually enter bankruptcy. Nortel even attempted a joint venture with Huawei, but this too failed within months. By the end of 2008, Nortel's full-time-employee count had fallen below 30,000, with approximately 10,000 in the United States. Nortel's revenues had fallen to less than $10 billion, resulting in an operating loss of greater than $2 billion.

23. Nortel entered bankruptcy protection in 2009. As part of the bankruptcy, Nortel sold a portion of its patent assets for an unprecedented and widely-publicized $4.5 billion — which was $1.3 billion more than the combined value of all of Nortel's business units that were

sold prior to the patent auction.  According to reports in the *Wall Street Journal*, Huawei was among the bidders for Nortel's patents.  But the ultimate purchasers were a consortium of leading technology companies collectively known as Rockstar Bidco, LP.  Among the assets sold to Rockstar Bidco, LP were the Asserted Patents.

24. Nortel's bankruptcy cost more than 30,000 employees their jobs at Nortel, and left others without pension and life insurance coverage.  Employee pensions were slashed in half when Nortel could no longer meet payment obligations. Some workers lost life insurance or medical benefits when the company's self-funded programs collapsed.  Absent the auction of the Nortel patents, including the Asserted Patents, these funding shortages would have been far greater and their impact far more damaging to Nortel employees.

25. Rockstar Bidco, LP transferred the patents to Rockstar Consortium US, LP ("Rockstar"), an intellectual property company built on a core of former Nortel technology and business professionals.  Many of Rockstar's employees are former Nortel employees, including former Nortel engineers, managers and attorneys.

26. Plaintiff NNPT is a wholly-owned subsidiary of Spherix Incorporated.

27. Spherix was founded in 1967 as a scientific research company.  Spherix's common stock trades on the NASDAQ Capital Market system under the symbol SPEX.

28. Historically, Spherix has focused on biotechnology research and development.  Its research has led to numerous patents and patent applications relating to diverse innovative biotechnologies such as water purification, biodegradation management, and the use of D-tagatose for food and potentially medical and environmental applications.   Spherix acquired a portion of the Nortel patent portfolio, including the Asserted Patents, from Rockstar and then subsequently assigned the Asserted Patents to NNPT.

29. Spherix has formed a Technology Advisory Board to identify and address market opportunities for innovative technology, including telecommunications technology.  Part of the purpose of the creation of the Technology Advisory Board is to reward and provide compensation to the inventors of the patents Spherix acquires.

30. The Huawei Defendants represent one of the world's largest manufacturers and sellers of routing and switching products for high-performance networks.  Although headquartered in China, the Huawei Defendants have a world-wide presence, including multiple offices in the United States alone.

31. In addition to its North American Headquarters in Plano, Texas, Huawei has facilities and offices in Atlanta, Georgia; Reston, Virginia; Washington, D.C.; East Greenwich, Rhode Island; Chicago, Illinois; Bridgewater, New Jersey; Broomfield, Colorado; San Diego, California; Walnut Creek, California; Seattle, Washington; Philadelphia, Pennsylvania; Oklahoma City, Oklahoma; Overland Park, Kansas; and Monroe, Louisiana.

32. On information and belief, for the year ending December 31, 2013, Huawei had revenues of over $39 billion United States dollars, of which over $5 billion was from the United States and Canada.   Huawei's reported revenues have increased over the past five years by more than 60%.  Huawei's routing and switching products and services represent a substantial amount of Huawei's total revenue for each of those years.

33. On information and belief, Huawei uses overseas contract manufacturers for many of its products and then imports those products into the United States for sale and/or distribution.

34. The scope of Huawei's infringement of the Asserted Patents has been and continues to be substantial and willful.  The majority of Huawei's revenue from at least January

1, 2011 until the present is and has been generated by products and services implementing technology that infringes the Asserted Patents. The most recently issued Asserted Patent, U.S. Patent No. 8,607,323, does not expire until August of, 2023.

35. Huawei manufactured, sold, offered for sale and/or imported the infringing technology with knowledge of at least some of the Asserted Patents and the relevance of those patents to Huawei's products and services, including Huawei's infringement thereof, as shown, at least in part, by Huawei's efforts to purchase those patents from Nortel and Huawei's attempt to form a joint venture with Nortel.

### INFRINGEMENT OF U.S. PATENT NO. 6,578,086

36. On June 10, 2003, United States Letters Patent No. 6,578,086 ("the '086 patent") for "Dynamically Managing the Topology of a Data Network" was duly and legally issued to Joseph Regan and Alfred Nothaft. All rights and interest in the '086 patent have been assigned to NNPT. A true and correct copy of the '086 patent is attached hereto as Exhibit A.

37. Upon information and belief, Huawei has infringed and continues to infringe the '086 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, Huawei's CloudEngine 5800 series switches ) that are covered by one or more claims of the '086 patent. Huawei is liable for infringement of the '086 patent pursuant to at least 35 U.S.C. § 271 (a).

38. Huawei's acts of infringement have caused damage to NNPT and NNPT is entitled to recover from Huawei the damages sustained by NNPT as a result of Huawei's wrongful acts in an amount subject to proof at trial. Huawei's infringement of the '086 patent continues to cause damage to NNPT.

39. Upon information and belief, Huawei's infringement of the '086 patent has been and continues to be willful and deliberate. As a result, NNPT is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### INFRINGEMENT OF U.S. PATENT NO. 6,130,877

40. On October 10, 2000, United States Letters Patent No. 6,130,877 ("the '877 patent") for "Rate Controlled Broadcast for Activation of Entities in Large Scale Data Networks" was duly and legally issued to Peter Chi-Kin Lee. All rights and interest in the '877 patent have been assigned to NNPT. A true and correct copy of the '877 patent is attached hereto as Exhibit B.

41. Upon information and belief, Huawei has infringed and continues to infringe the '877 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of products (including, for example and without limitation, Huawei's AR150 and AR200 Series Enterprise Routers), that are covered by one or more claims of the '877 patent. Huawei is liable for infringement of the '877 patent pursuant to at least 35 U.S.C. § 271 (a).

42. Huawei's acts of infringement have caused damage to NNPT and NNPT is entitled to recover from Huawei the damages sustained by NNPT as a result of Huawei's wrongful acts in an amount subject to proof at trial. Huawei's infringement of the '877 patent continues to cause damage to NNPT.

Upon information and belief, Huawei's infringement of the '877 patent has been and continues to be willful and deliberate. As a result, NNPT is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**INFRINGEMENT OF U.S. PATENT NO. 6,697,325**

43. On February 24, 2004, United States Letters Patent No. 6,697,325 ("the '325 patent") for "System, Device, and Method for Expediting Reconvergence in a Communication Network" was duly and legally issued to Bradley Cain. All rights and interest in the '325 patent have been assigned to NNPT. A true and correct copy of the '325 patent is attached hereto as Exhibit C.

44. Upon information and belief, Huawei has infringed and continues to infringe the '325 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of products (including, for example and without limitation, Huawei's AR150 and AR250 Series Enterprise Routers), that are covered by one or more claims of the '325 patent. Huawei is liable for infringement of the '325 patent pursuant to at least 35 U.S.C. § 271 (a).

45. Huawei's acts of infringement have caused damage to NNPT and NNPT is entitled to recover from Huawei the damages sustained by NNPT as a result of Huawei's wrongful acts in an amount subject to proof at trial. Huawei's infringement of the '325 patent continues to cause damage to NNPT.

46. Upon information and belief, Huawei's infringement of the '325 patent has been and continues to be willful and deliberate. As a result, NNPT is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**INFRINGEMENT OF U.S. PATENT NO. 7,664,123**

47. On February 16, 2010 United States Letters Patent No. 7,664,123 ("the '123 patent") for "Generalized Virtual Router" was duly and legally issued to Peter Ashwood Smith, Hamid Ouid-Brahim, Bilel Jamoussi and Donald Fedyk. All rights and interest in the '123

patent have been assigned to NNPT. A true and correct copy of the '123 patent is attached hereto as Exhibit D.

48. Upon information and belief, Huawei has infringed and continues to infringe the '123 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, Huawei's CloudEngine 12800 Series Switches), that infringe one or more claims of the '123 patent. Huawei is liable for infringement of the '123 patent pursuant to at least 35 U.S.C. § 271 (a).

49. Huawei's acts of infringement have caused damage to NNPT and NNPT is entitled to recover from Huawei the damages sustained by NNPT as a result of Huawei's wrongful acts in an amount subject to proof at trial. Huawei's infringement of the '123 patent continues to cause damage to NNPT.

50. Upon information and belief, Huawei's infringement of the '123 patent has been and continues to be willful and deliberate. As a result, NNPT is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## INFRINGEMENT OF U.S. PATENT NO. 8,607,323

51. On December 10, 2013, United States Letters Patent No. 8,607,323 ("the '323 patent") for "Method for Providing Media Communication Across Firewalls" was duly and legally issued to Wei Yuan. All rights and interest in the '323 patent have been assigned to NNPT. A true and correct copy of the '323 patent is attached hereto as Exhibit E.

52. Upon information and belief, Huawei has infringed and continues to infringe the '323 patent. The infringing acts include at least the manufacture, sale and/or offer for sale of devices (including, for example and without limitation, Huawei's AR G3 Series Enterprise

Routers), that are covered by one or more claims of the '323 patent. Huawei is liable for infringement of the '323 patent pursuant to at least 35 U.S.C. § 271 (a).

53. Huawei's acts of infringement have caused damage to NNPT and NNPT is entitled to recover from Juniper the damages sustained by NNPT as a result of Huawei's wrongful acts in an amount subject to proof at trial. Huawei's infringement of the '323 patent continues to cause damage to NNPT.

54. Upon information and belief, Huawei's infringement of the '323 patent has been and continues to be willful and deliberate. As a result, NNPT is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, NNPT prays for judgment and seeks relief against Huawei as follows:

(a) For judgment that the claims of the '086 patent have been and/or continue to be infringed by Huawei;

(b) For judgment that the claims of the '877 patent have been and/or continue to be infringed by Huawei;

(c) For judgment that the claims of the '325 patent have been and/or continue to be infringed by Huawei;

(d) For judgment that the claims of the '123 patent have been and/or continue to be infringed by Huawei;

(e) For judgment that the claims of the '323 patent have been and/or continue to be infringed by Huawei;

(f) For an accounting of all damages sustained by NNPT as the result of Huawei's acts of infringement;

(g) For actual damages together with, prejudgment interest, according to proof;

(h) For enhanced damages pursuant to 35 U.S.C. § 284;

(i) For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(j) For all costs of suit; and

(k) For such other and further relief as the Court may deem just and proper.

Date: June 9, 2014

Respectfully submitted**:**

By: */s/ Barry Golob by permission T. John Ward, Jr.*
Barry Golob – LEAD ATTORNEY
Kerry B. McTigue
Donald R. McPhail
**COZEN O'CONNOR**
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, D.C. 20006
Tel: (202) 912-4800
Fax: (202) 861-1905
Email: bgolob@cozen.com
Email: kmctigue@cozen.com
Email: dmcphail@cozen.com

T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@jwfirm.com
Claire Abernathy Henry
State Bar No. 24053063
Email: claire@wsfirm.com
**WARD & SMITH LAW FIRM**
P.O. Box 1231
1127 Judson Road, Suite 220
Longview, Texas 75601
Tel: (903) 757-6400
Fax: (903) 757-2323

*Attorneys for Plaintiff NNPT, LLC*